IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| LELAND J. GAUTIER, an individual, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. CIV-08-445-C |
| | ) | |
| JUSTIN JONES, in his official capacity, | ) | |
| Director, Department of Corrections of the | ) | |
| State of Oklahoma, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff filed this action seeking declaratory and injunctive relief under 42 U.S.C.

§ 1983.  Plaintiff claims that Defendant, in his official capacity as Director of the Department

of Corrections for the State of Oklahoma, is depriving him of rights guaranteed to him under

U.S. Const. art. 1, § 10; OK Const. art. 2, § 15; and U.S. Const. amend. XIV, § 2.  (See Pl.'s

2d Amend. Compl., Dkt. No. 13.)  Now before the Court are Plaintiff's Motion for Summary

Judgment (Dkt. No. 26), Defendant's Combined Response and Motion to Dismiss (Dkt. No.

28), and Plaintiff's Reply (Dkt. No. 30).  For the reasons stated below, Plaintiff's motion is

GRANTED.[1]

---

[1]    Intervenor, the United States of America, filed a Motion to Dismiss Plaintiff's
constitutional challenges to the Federal Sex Offender Registration and Notification Act ("SORNA").
(Dkt. No. 27.) Plaintiff filed a Reply stating that he does not oppose Intervenor's Motion to Dismiss
and explaining the reason for his non-opposition. (Dkt. No. 29.) Accordingly, the United States of
America's Motion to Dismiss is GRANTED.  The constitutionality of SORNA is therefore not at
issue in this case.

### BACKGROUND

On March 24, 1997, Plaintiff pleaded *nolo contendere* to the charge of sexual battery on a 17-year-old female and received a two-year suspended sentence.  According to Plaintiff, he was required to register as a sex offender with the Oklahoma Department of Corrections (ODOC) for ten years based on the version of the Oklahoma Sex Offenders Registration Act (the Act) then in force.  57 Okla. Stat. § 583(C) (1996). On November 1, 2007, after Plaintiff's conviction, Oklahoma amended 57 Okla. Stat. § 581 *et seq.*  On February 7, 2008, Plaintiff received a letter from the Oklahoma Department of Corrections informing him of these changes and telling him that, because he was assigned a risk level of III, he was required to register for life.  Absent these changes, Plaintiff's registration period would have ended on March 18, 2009.

Plaintiff now asks this Court for summary judgment, alleging that the State breached his plea agreement by changing his registration period from ten years to life.  Plaintiff also argues that retroactive application of the lifetime registration requirement violates the *Ex Post Facto* Clause of both the U.S. Constitution and the Oklahoma Constitution, as well as the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution.

### STANDARD OF REVIEW

A motion for summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "An issue of fact is 'genuine' if the evidence allows a reasonable jury

to resolve the issue either way and is 'material' when 'it is essential to the proper disposition of the claim.'" Haynes v. Level 3 Commc'ns, LLC, 456 F.3d 1215, 1219 (10th Cir. 2006) (citation omitted).

The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). If the movant carries this initial burden, the nonmovant must then set forth "specific facts" outside the pleadings and admissible into evidence showing a genuine issue for trial. Fed. R. Civ. P. 56(e)(2). These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." Celotex, 477 U.S. at 324. "The burden is not an onerous one for the nonmoving party in each case, but does not at any point shift from the nonmovant to the district court." Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 672 (10th Cir. 1998). All facts and reasonable inferences therefrom are construed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## DISCUSSION

### A. Plaintiff's Breach of Plea Agreement Claim

"Where the government obtains a . . . plea predicated in any significant degree on a promise or agreement with the prosecuting attorney, such promise must be fulfilled to maintain the integrity of the plea." United States v. Hand, 913 F.2d 854, 856 (10th Cir. 1990). General principles of contract law govern the interpretation of a plea agreement.

United States v. Cudjoe, 534 F.3d 1349, 1353 (10th Cir. 2008).  Thus, the Court must "'look to the express language in the agreement to identify both the nature of the government's promise and the defendant's reasonable understanding of the promise at the time of the entry of the . . . plea.'"  Id. (quoting United States v. Rodriguez-Rivera, 518 F.3d 1208, 1212-13 (10th. Cir. 2008)).  A defendant's subjective understanding "is neither a promise nor a plea bargain."  Laycock v. New Mexico, 880 F.2d 1184, 1186 (10th Cir. 1989).

According to Plaintiff, application of the lifetime sex offender registration requirement violates a promise of ten-year registration contained in his plea agreement.  He seeks specific enforcement of this alleged promise and attempts to distinguish this case from the Tenth Circuit's decision in Cunningham v. Diesslin, 92 F.3d 1054 (10th Cir. 1996).  The petitioner in Cunningham pleaded guilty to first-degree sexual assault in 1982.  Id. at 1056.  At that time, the Colorado State Parole Board ("Parole Board") interpreted a statutory mandatory parole requirement to apply to virtually all inmates, including those in the petitioner's situation.  Id.  In 1989, however, the Parole Board changed its interpretation of the mandatory parole requirement and determined that individuals sentenced for any sex offense were not subject to mandatory parole.  Id. at 1057.

On appeal to the Tenth Circuit, the petitioner argued, *inter alia*, that the sentencing term of his plea bargain should be specifically enforced because all of the parties understood that mandatory parole would apply to his sentence at the time of the plea.  Id. at 1058.  The Court of Appeals rejected the petitioner's argument because application of mandatory parole to the petitioner's sentence was "neither an explicit nor an implicit part of the plea

agreement." Id. at 1059.  The fact that the petitioner, the prosecution, and the trial court all understood mandatory parole to apply to the petitioner's sentence was irrelevant because this understanding was never made part of the plea agreement.  Id. at 1060.  Moreover, even though the petitioner's attorney informed him that mandatory parole would apply to his sentence, the Court explained that such a statement could not be binding because it was not a part of the plea agreement.  Id.

Plaintiff argues that this case differs from Cunningham because ten-year registration *was* part of his plea agreement.  Because the plea agreement does not expressly mention the length of Plaintiff's registration obligation but merely contains a provision requiring Plaintiff to comply with the Act, he contends that "ten year registration was both an implicit, statutory promise made by the state, via the plea agreement, and a 'reasonable understanding' for Plaintiff to have formed, after reading plea documents and relying upon his attorney's explanation of his obligations."  (Pl.'s Mot., Dkt. No. 26, p. 7.)  According to Plaintiff, the version of the Act in effect at the time of his plea created an implicit promise regarding the length of time he would be required to register by prescribing a ten-year registration period. Id.  He uses the term "promise" to refer solely to the language of the former statute and admits that no person made any explicit promise related to the length of his registration obligation.  (Pl.'s Reply, Dkt. No. 30, pp. 6-7.)

The Court finds that Plaintiff's argument is without merit for two reasons.  First, no provision of the Act expressly or implicitly promised that the registration terms would remain static.  The Legislature has broad power to amend existing legislation and was free to alter

5

the statute's registration requirements at any time. <u>See</u> <u>Movants to Quash Multicounty Grand</u> <u>Jury Subpoena v. Dixon</u>, 2008 OK 36, ¶ 22, 184 P.3d 546, 553; 1A Norman J. Singer & J.D. Shambie Singer, <u>Sutherland Statutory Construction</u> § 22:2 (6th ed. 2002) ("Existing legislation is subject to amendment in any manner consistent with constitutional limitations."). Thus, the statute's registration period as it existed at the time of Plaintiff's plea did not, without more, constitute a promise about the length of time Plaintiff would ultimately be required to register. As in <u>Cunningham</u>, the term Plaintiff wants specifically enforced was simply not part of the plea agreement.

Second, the Act creates an independent statutory duty to register that may not be modified or abrogated as part of a plea agreement or sentence. <u>See</u> 57 Okla. Stat. § 583(A) ("Any person who becomes subject to the provisions of the Sex Offenders Registration Act on or after November 1, 1989, *shall register* . . . .") (emphasis added). The use of the word "shall" signals that registration is mandatory rather than discretionary. <u>Sneed v. Sneed</u>, 1978 OK 138, ¶ 3, 585 P.2d 1363, 1364. Because the duty to register as a sex offender arises by legislative mandate, it is not negotiable as part of a plea agreement. <u>See</u> <u>Alabama v.</u> <u>Goldberg</u>, 819 So.2d 123, 126 (Ala. Crim. App. 2001); <u>California v. Hernandez</u>, 83 Cal. Rptr. 3d 29, 33 (Cal. Ct. App. 2008); <u>N.M. v. Brothers</u>, 59 P.3d 1268, 1274 (N.M. Ct. App. 2002); <u>Wash. v. Acheson</u>, 877 P.2d 217, 219-20 (Wash. Ct. App. 1994). The prosecuting attorney lacked the power to make any enforceable promise regarding Plaintiff's obligations under the Act because Plaintiff became subject to the statute's mandatory registration

6

requirement and any subsequent modifications thereof solely by virtue of his status as a sex offender. <u>See</u> 57 Okla. Stat. §§ 582, 583.

Moreover, an Oklahoma court sentencing a criminal defendant is limited to the powers articulated by statute. <u>See</u> <u>Nevious v. State</u>, 1989 OK CR 13, ¶ 6, 774 P.2d 1070, 1071 (noting that a court lacks the power to impose a penalty without authorization from the Legislature); <u>Williams v. State</u>, 1985 OK CR 167, ¶ 7, 711 P.2d 116, 118 (holding that the trial court lacked jurisdiction to assess court-appointed attorney fees against a convicted defendant in the absence of specific statutory authorization). As Defendant correctly points out in his brief, nothing in the Oklahoma statute setting forth the powers of a sentencing court grants a court the power to exempt a defendant from sex offender registration or to define the length of time an individual must register. <u>See</u> 22 Okla. Stat. § 991a. Thus, the sentencing court could not guarantee that Plaintiff would be required to register for any specific amount of time, and any such promise that may have arisen when the court accepted the plea agreement would be unenforceable.

Plaintiff places emphasis on the fact that he relied on his attorney's explanation that he would only be required to register as a sex offender for ten years. He contends that he would not have pleaded *nolo contendere* to the charge of sexual battery if he knew he would be required to register for life. Defendant disputes the fact of Plaintiff's reliance and claims that Plaintiff pleaded because he thought he might be convicted if tried, not because of the ten-year registration requirement. While this raises a genuine factual dispute, the Court finds that this does not preclude summary judgment because Plaintiff's reliance is immaterial to

his breach of plea agreement claim.  The Tenth Circuit Court of Appeals in <u>Cunningham</u>, when addressing such a claim, attached no significance to the fact that the petitioner's counsel erroneously advised him about the length of his sentence.[2]  Instead, the Court noted that "any statement by the petitioner's attorney . . . does not bind the court unless it is a part of the plea agreement." <u>Id.</u> at 1060.  Therefore, because ten-year registration was not a part of Plaintiff's plea agreement, any statements made by his attorney regarding the length of his registration obligation are simply irrelevant to Plaintiff's breach of plea agreement claim.

Even if Plaintiff's reliance were material, it would not change the outcome.  Such reliance on his attorney's erroneous advice is not alone enough for Plaintiff to prevail under well-established Tenth Circuit law.  <u>See</u> <u>Bush v. Neet</u>, 400 F.3d 849, 852-53 (10th Cir. 2005).  "The defendant 'assumes the risk of ordinary error in either his or his attorney's assessment of the law and facts.'" <u>Id.</u> at 852 (<u>quoting</u> <u>McMann v. Richardson</u>, 397 U.S. 759, 774 (1970)).  Consequently, Plaintiff must prove not only that he relied on his counsel's mistaken advice, but also that his counsel was constitutionally ineffective in rendering the advice.  <u>Id.</u> at 853.  Although Plaintiff might have pleaded differently had he known the registration requirement would be altered at a later date, "'he is bound by his plea and his conviction unless he can allege and prove serious derelictions on the part of counsel'"

---

[2]  The petitioner in <u>Cunningham</u> also raised a claim that he did not enter his plea knowingly and voluntarily because his attorney led him to believe that mandatory parole was part of his plea agreement.  In the context of this claim only, the Tenth Circuit noted that a defendant's misunderstanding of his plea agreement may render his plea constitutionally infirm when that misunderstanding was based upon a representation by defense counsel and it affected the defendant's decision with respect to the plea.

sufficient to make out a constitutional claim of ineffective assistance of counsel.  Id. at 853

(quoting McMann, 397 US at 774).  Plaintiff does not contend that his counsel was

constitutionally ineffective in relying on the then-current sex offender registration terms

when he explained Plaintiff's registration obligations.  Therefore, Plaintiff's reliance would

not entitle him to relief even if it were material to his breach of plea agreement claim.

## B.  Plaintiff's *Ex Post Facto* Claim[3]

Article I, Section 9, Clause 3 of the U.S. Constitution provides that "[n]o . . . ex post

facto Law shall be passed."  The United States Supreme Court laid out a two-part test for

determining whether a sex offender registration law constitutes retroactive punishment in

violation of this provision:

> We must ascertain whether the legislature meant the statute to establish "civil"
> proceedings.  If the intention of the legislature was to impose punishment, that
> ends the inquiry.  If, however, the intention was to enact a regulatory scheme
> that is civil and nonpunitive, we must further examine whether the statutory
> scheme is so punitive either in purpose or effect as to negate [the State's]
> intention to deem it "civil."  Because we ordinarily defer to the legislature's
> stated intent, only the clearest proof will suffice to override legislative intent
> and transform what has been denominated a civil remedy into a criminal
> penalty.

---

[3] Plaintiff also challenges the Act under Oklahoma's *ex post facto* clause of the Oklahoma
Constitution.  Plaintiff does not cite, nor is the Court able to find, any case indicating that the
Oklahoma clause is interpreted differently than the Federal clause.  In fact, when parties raise
challenges under both clauses, the Oklahoma Court of Criminal Appeals conducts a single analysis
and follows U.S. Supreme Court precedent.  See, e.g., James v. State, 2009 OK CR 8, ¶¶ 5-6, 204
P.3d 793, 795-96; Coddington v. State, 2006 OK CR 34, ¶¶ 59-60, 142 P.3d 437, 453-54; Allen v.
State, 1991 OK CR 35, ¶ 18, 821 P.2d 371, 375.  Accordingly, the Court combines the analysis of
both the state and federal provisions.

Smith v. Doe, 538 U.S. 84, 92 (2003) (citations and internal quotation marks omitted).  With respect to the legislative intent prong of the test, "[w]hether a statutory scheme is civil or criminal 'is first of all a question statutory construction.'  We consider the statute's text and its structure to determine the legislative objective."  Id. (citations omitted).

With respect to the effects prong of the test, courts assessing the constitutionality of a sex offender registration statute should consider the following factors:

> whether, in its necessary operation, the regulatory scheme:  has been regarded in our history and traditions as a punishment; imposes an affirmative disability or restraint; promotes the traditional aims of punishment; has a rational connection to a nonpunitive purpose; or is excessive with respect to this purpose.

Smith, 538 U.S. at 97.  These factors are "'neither exhaustive nor dispositive,' but are 'useful guideposts.'"  Id. at 97 (citations omitted).  Applying these principles, the Court finds that the Act does not run afoul of the *Ex Post Facto* Clause.

*1.  Legislative Intent*

The best evidence of legislative intent is the statutory text itself.  See id. at 93.  As did the Alaska Legislature, see id., the Oklahoma Legislature expressly identified public safety as the Act's primary objective:

> The Legislature finds that sex offenders . . . pose a high risk of re-offending after release from custody.  The Legislature further finds that the privacy interest of persons adjudicated guilty of these crimes is less important than the state's interest in *public safety*.  The Legislature additionally finds that a system of registration will permit law enforcement officials to identify and alert the public when necessary for *protecting the public safety*.

57 Okla. Stat. § 581(B) (emphasis added).  Protecting the public by placing restrictions on sex offenders is "'a legitimate nonpunitive governmental objective and has been historically so regarded.'"  Smith, 538 U.S. at 93 (quoting Kansas v. Hendricks, 521 U.S. 346, 363 (1997)).  Thus, the legislature's stated purpose indicates an intent to establish a civil regulatory scheme rather than a punishment.

In addition to the legislature's stated objective, "[o]ther formal attributes of [the] legislative enactment," including "the manner of its codification[,] . . . are probative of the legislature's intent."  Id. at 94.  Plaintiff argues that the Act's codification in Title 57, "Prisons and Reformatories," evidences a punitive intent because "'Prisons and Reformatories' are penal terms, inasmuch as they are the classic penal institutions."  (Pl.'s Reply, Dkt. No. 30, p. 9.)  However, "[t]he location and labels of a statutory provision do not by themselves transform a civil remedy into a criminal one."  538 U.S. at 94.  Other courts to address this issue have found such codification insufficient to override the legislature's stated objective.  See Smith, 538 U.S. at 95; Hatton v. Bonner, 356 F.3d 955, 962-63 (9th Cir. 2004).

The Court similarly finds that the location of the Act in Title 57, "Prisons and Reformatories," does not render the legislative punitive.  Title 57 contains several provisions that do not involve criminal punishment.  See, e.g., 57 Okla. Stat. § 1 (directing county commissioners to inspect jails); id. § 69 (providing for the service of meals to county jail personnel); id. § 332.1 (authorizing the Pardon and Parole Board to employ professional investigators and clerical and administrative personnel); id. § 623 (authorizing the

Department of Corrections to operate on-site primary medical treatment programs). Because "considerable deference must be accorded to the intent as the legislature has stated it," Smith, 538 U.S. at 93, codification of the Act in "Prisons and Reformatories" is insufficient to override the legislature's stated objective. Accordingly, the Court finds that the Oklahoma Legislature intended to enact a nonpunitive civil regulatory scheme.

*2. Effects*

Having determined that the legislature's intent was nonpunitive, the Court must now consider the effects of the Act using the Mendoza-Martinez[4] factors. Id. at 97. Only the "clearest proof" will suffice to show that the Act "is so punitive in . . . effect as to overcome the legislature's civil intent." Femedeer v. Haun, 227 F.3d 1244, 1249 (10th Cir. 2000); see Smith, 538 U.S. at 92.

*a. Historically Regarded as Punishment*

The Court first asks whether the registration and notification provisions of the Act have historically been regarded as punishment. See Smith, 538 U.S. at 97. In Smith, the Supreme Court considered and rejected an analogy between the notification provisions of Alaska's Act–including the provision allowing the posting of sex offender information on the Internet–and early colonial shaming punishments. Id. at 97-99. The Court stated that, in contrast to colonial shaming punishments where the offender was held up before the community for ridicule, the stigma from Alaska's law "results not from public display for

---

[4] See Kennedy v. Mendoza-Martinez, 372 U.S. 144 (1963).

12

ridicule and shaming but from the dissemination of accurate information about a criminal record, most of which is already public." Id. at 98.  The Court noted that "[o]ur system does not treat dissemination of truthful information in furtherance of a legitimate governmental objective as punishment." Id.  Additionally, the Court observed that the process of looking up information in the sex offender registry "is more analogous to a visit to an official archive of criminal records than it is to a scheme forcing an offender to appear in public with some visible badge of past criminality" because an individual "must take the initial step of going to the Department of Public Safety's Web site, proceed to the sex offender registry, and then look up the desired information." Id. at 99; see also Femedeer, 227 F.3d at 1251 ("Under Utah's law, registry information is made widely available, but it is not broadcast in a manner approaching the historical examples of public shaming.  Interested individuals must still make an affirmative effort to retrieve the information.").

Plaintiff contends that Oklahoma's statute differs from Alaska's in a significant way because it *does* force an offender to appear in public with a "visible badge of past criminality."  (Pl.'s Reply, Dkt. No. 30, p. 10.)  Specifically, 47 Okla. Stat. § 6-111(D)(1) requires the Department of Public Safety to issue a driver's license bearing the words "Sex Offender" to a convicted sex offender who is designated by the Department of Corrections as "an aggravated or habitual offender."  The Court will not consider whether 47 Okla. Stat. § 6-111(D)(1) is punitive in nature because the statute is not part of the Act, which is codified at 57 Okla. Stat. § 581 *et seq*.  Rather, 47 Okla. Stat. § 6-111(D)(1) is a distinct provision in the motor vehicle code that Plaintiff has not challenged in his complaint.

13

Because Plaintiff's argument with respect to 47 Okla. Stat. § 6-111(D)(1) fails, the analysis in <u>Smith</u> applies with equal force to the Act. The statute does not hold the offender up before the community for public ridicule. Instead, it provides for the dissemination of truthful information in furtherance of a legitimate governmental objective. Therefore, the Court finds that this factor weighs against finding the statute punitive.

### b. Promotes the Traditional Aims of Punishment

<u>Smith</u> next requires the Court to consider whether the Act promotes the traditional aims of punishment: deterrence and retribution. 538 U.S. at 102. In <u>Smith</u>, the Supreme Court rejected the proposition that a deterrent effect alone makes the statute punitive. <u>Id.</u> Instead, it reasoned that "[a]ny number of governmental programs might deter crime without imposing punishment," and "'[t]o hold that the mere presence of a deterrent purpose renders such sanctions "criminal" . . . would severely undermine the Government's ability to engage in effective regulation." <u>Id.</u> (quoting <u>Hudson v. United States</u>, 522 U.S. 93, 105 (1997)). The Court also declined to find Alaska's Act retributive even though "'the length of the [registration obligation] appears to be measured by the extent of the wrongdoing, not by the extent of the risk posed.'" <u>Id.</u> at 102 (quoting <u>Doe I v. Otte</u>, 259 F.3d 979, 990 (9th Cir. 2001)). The Court stated that the length of the registration obligation, although tied to the seriousness of an offender's wrongdoing, is "reasonably related to the danger of recidivism, and this is consistent with the regulatory objective." <u>Id.</u>

Plaintiff here points to nothing in the Act that affects the applicability of the Supreme Court's analysis in <u>Smith</u>.  Accordingly, the Court finds that this factor does not make the statute punitive in effect.

### c. Affirmative Disability or Restraint

This Court next asks whether the Act subjects sex offenders to an affirmative disability or restraint.  <u>Smith</u>, 538 U.S. at 99.  Analyzing the Alaska Act in <u>Smith</u>, the Supreme Court observed that "[t]he Act imposes no physical restraint, and so does not resemble the punishment of imprisonment, which is the paradigmatic affirmative disability or restraint." <u>Id.</u> at 100.  The Court considered it significant that "[t]he Act does not restrain activities sex offenders may pursue but leaves them free to change jobs or residences." <u>Id.</u> Furthermore, the Court declined to recognize a parallel between sex offender registration and probation or supervised release with respect to the restraint imposed. <u>Id.</u> at 101.  The Court reasoned that "[p]robation and supervised release entail a series of mandatory conditions and allow the supervising officer to seek the revocation of probation or release in case of infraction," whereas "offenders subject to the Alaska statute are free to move where they wish and to live and work as other citizens, with no supervision." <u>Id.</u>  Accordingly, the Court ultimately determined that "the registration requirements make a valid regulatory program effective and do not impose punitive restraints in violation of the *Ex Post Facto* Clause." <u>Id.</u> at 102.

Plaintiff argues that analysis of the Act should yield the opposite result because the Act "severely limits where registrants may live."  (Pl.'s Reply, Dkt. No. 30, p. 10.)  Plaintiff

is correct that the Act contains a residency restriction not present in the Alaska statute upheld in <u>Smith</u>. Specifically, 57 Okla. Stat. § 590(A) makes it unlawful for a registered sex offender to reside within 2,000 feet of a school, other educational institution, playground, park, or licensed child care center. This provision does not require the sex offender to move if a new daycare or park is established within the 2,000-foot radius, 57 Okla. Stat. § 590(A), nor does it require an individual to sell or otherwise dispose of any real property owned prior to a conviction for a sex offense. <u>Id.</u> § 590(B).

Placing restrictions on where a person may live undoubtedly imposes an affirmative disability or restraint. <u>See</u> <u>Doe v. Miller</u>, 405 F.3d 700, 721 (8th Cir. 2005). This fact, however, does not automatically transform a civil scheme into a punishment. In <u>Kansas v. Hendricks</u>, the Supreme Court held that the civil commitment of mentally ill sex offenders does not constitute punishment, even though it imposes an extreme disability and restraint on those committed. 521 U.S. 346, 363 (1997). The Court reached this conclusion because it considered the restraint in relation to the legislature's legitimate nonpunitive objective—protecting the public from mentally unstable offenders. <u>Id.</u> In a more recent case, the Eighth Circuit addressed the constitutionality of an Iowa sex offender registration law featuring a residency restriction and noted that a residency restriction is "certainly less disabling . . . than the civil commitment scheme at issue in <u>Hendricks</u>, which permitted complete confinement of affected persons." <u>Miller</u>, 405 F.3d at 721. The court then concluded that <u>Smith</u> and <u>Hendricks</u> stand for the proposition that the presence of an affirmative disability or restraint "ultimately points us to the importance of the next inquiry:

16

whether the law is rationally connected to a nonpunitive purpose, and whether it is excessive in relation to that purpose." Id. The Eighth Circuit ultimately upheld the Iowa statute based on the law's relationship to its nonpunitive purpose. Id. at 723.

This Court finds the Eighth Circuit's reasoning persuasive. Oklahoma's residency restriction, like Iowa's, cannot be considered more disabling than civil commitment even though it imposes an affirmative disability or restraint. Thus, standing alone, it does not make the statute punitive. The restraint imposed must be considered in light of remaining Mendoza-Martinez factors to determine whether the Act is punitive.[5]

### d. Rational Connection to a Nonpunitive Purpose

Whether the Act has a rational connection to a nonpunitive purpose is the "most significant factor" in the Mendoza-Martinez framework. Smith, 538 U.S. at 102; Miller, 405 F.3d at 721. A statute need not be "narrowly drawn" to accomplish its legitimate public safety objective in order to satisfy the "rational connection" requirement. Smith, 538 U.S. at 103. As the Supreme Court explained in Smith, "A statute is not deemed punitive simply because it lacks a close or perfect fit with the nonpunitive aims it seeks to advance." Id. The Act unquestionably has a rational connection to a nonpunitive purpose. The legislature could reasonably conclude that placing certain restrictions on convicted sex offenders advances the

---

[5] Another federal court in Oklahoma found that Oklahoma's residency restriction probably was not punitive even though it forced a sex offender to move out of his wife's home due to the home's location near a school. Graham v. Henry, No. 06 CV 381 TCK FHM, 2006 WL 2645130 (N.D. Okla. Sept. 14, 2006) (refusing to grant a sex offender a preliminary injunction in part because he was unlikely to be able to show that the residency restriction was punitive).

goal of protecting the public where "[t]he risk of recidivism posed by sex offenders is 'frightening and high.'" Id. (citing McKune v. Lile, 536 U.S. 24, 34 (2002)).

### e. Excessiveness in Relation to Nonpunitive Purpose

The final Mendoza-Martinez factor this Court must consider is whether the regulatory scheme is excessive in relation to its nonpunitive purpose. Smith, 538 U.S. at 97. The Supreme Court in Smith explained the limited nature of this inquiry:

> The excessiveness inquiry of our *ex post facto* jurisprudence is not an exercise in determining whether the legislature has made the best choice possible to address the problem it seeks to remedy. The question is whether the regulatory means chosen are *reasonable* in light of the nonpunitive objective.

Id. at 105 (emphasis added). Requiring sex offenders to register and limiting where they may live are *reasonable* means of protecting public safety. Although the Act may not represent the best choice among all possible alternatives for protecting the public against the high risk of recidivism posed by sex offenders, reasonableness is all that the *Ex Post Facto* Clause requires.

Nonetheless, Plaintiff argues that labeling him as currently dangerous and requiring him to register for life based solely on his past conviction does not square with the legislature's public safety purpose. (Pl.'s Reply, Dkt. No. 30, p. 10.) The essence of Plaintiff's argument is that the absence of an individualized risk assessment mechanism renders the statute excessive. The Supreme Court already rejected this argument in Smith, noting that "[t]he *Ex Post Facto* Clause does not preclude a State from making reasonable categorical judgments that conviction of specified crimes should entail particular regulatory

consequences." Id. at 103.  The Court found that the Alaska legislature could reasonably conclude that "a conviction for a sex offense provides evidence of substantial risk of recidivism" and, on that basis alone, require all sex offenders to register without converting the statute into a punishment. Id.  The Court explained that "[i]n the context of the regulatory scheme the State can dispense with individual predictions of future dangerousness and allow the public to assess the risk on the basis of accurate, nonprivate information about the registrants' convictions without violating the prohibitions of the *Ex Post Facto* Clause." Id. at 104.  These same principles apply in this case, and Plaintiff's argument therefore must fail.

### f. Conclusion

Having considered the relevant Mendoza-Martinez factors, the Court finds that Plaintiff "cannot show, much less by the clearest proof, that the effects of the law negate [Oklahoma's] intention to establish a civil regulatory scheme." Id. at 105.  Because the Act is nonpunitive, its retroactive application does not violate the *Ex Post Facto* Clause.

## C.  Plaintiff's Due Process Claim

### 1. Procedural Due Process

Plaintiff contends that application of the lifetime registration requirement violates his Fourteenth Amendment right to procedural due process.  The Act directs ODOC to develop or select a screening tool to determine the level of risk the offender poses to the community by assigning a certain number of points for "each of the various factors."  57 Okla. Stat. § 582.5(C).  The screening tool chosen by the committee is the "Sex Offender Registration Level Assignment Tool," DOC 020307E, Nov. 1, 2007.  This tool consists of a chart listing

the different crimes requiring registration as a sex offender and assigning one to three points for each crime.  The number of points assigned to an offender, based solely on the offense of conviction, then constitutes that individual's risk level.  The duration requirement for registration, along with a variety of other requirements, depends upon the level of classification assigned to the offender.  ODOC classified Plaintiff as a level III offender, thereby defining him as one who "poses a serious danger to the community and [who] will continue to engage in criminal sexual conduct."  57 Okla. Stat. § 582.5(C)(3).  Plaintiff contends that this classification was made without affording him any sort of hearing to determine whether he posed a future danger, thereby denying him procedural due process.

To determine whether Plaintiff was denied procedural due process, the Court must engage in a two-part inquiry:  "'(1) did the individual possess a protected interest such that the due process protections were applicable; and, if so, then (2) was the individual afforded an appropriate level of process.'"  Watson v. Univ. of Utah Med. Ctr., 75 F.3d 569, 577 (10th Cir. 1996) (quoting Hatfield v. Bd. of County Comm'rs, 52 F.3d 858, 862 (10th Cir. 1995)). Plaintiff asserts that his liberty interest in his good name and reputation are at stake due to Defendant's classification of him as a level III sex offender.  In order for this deprivation to give rise to due process protections, Plaintiff must meet the "stigma plus" standard, which requires him to show that "(1) the government made a statement about him . . . that is sufficiently derogatory to injure his . . . reputation, that is capable of being proved false, and that he . . . asserts is false, and (2) [he] experienced some governmentally imposed burden

that 'significantly altered [his] . . . status as a matter of state law.'" <u>Gwinn v. Awmiller</u>, 354

F.3d 1211, 1216 (10th Cir. 2004) (citation omitted).

The Court finds that Plaintiff possessed a liberty interest in his good name and

reputation which required due process protections.  Based on the statutory language found

in the Act, it is clear that by classifying Plaintiff as a level III sex offender, ODOC is making

the statement that he "poses a serious danger to the community and will continue to engage

in criminal sexual conduct."  57 Okla. Stat. § 582.5(C)(3).[6]  Plaintiff is capable of proving

this statement false, and he clearly asserts that it is false.   Additionally, Plaintiff's

classification as a level III sex offender requires him to register for life, verify his address

every ninety days, and abide by stringent residency restrictions.  It is clear to the Court that

these constitute a governmentally-imposed burden that changes Plaintiff's status as a matter

of law.

The next step, then, is for the Court to determine whether Plaintiff has been afforded

an appropriate level of process.  At a minimum, the Due Process Clause requires that Plaintiff

---

[6] Defendant argues that such a statement is not made, relying on the following language found on the ODOC website:

> The Oklahoma Department of Corrections has not considered or assessed the specific risk of re-offense with regard to any individual prior to his or her inclusion on this web site and has made no determination that any individual included on the web site is currently dangerous.  Individuals on the registry are included solely by virtue of their conviction record and state law.  The primary purpose of providing this information is to make the information easily available and accessible.  In Oklahoma sex offenders are required to register with the Department of Corrections and with their local law enforcement agency.

Regardless of ODOC's statements to the contrary, the Oklahoma state legislature, as evident from the plain language of the Act, is making the statement that level III offenders, such as Plaintiff, pose a serious danger to the community.

be given notice of the potential deprivation of his liberty interest along with the opportunity to be heard "'at a meaningful time and in a meaningful manner.'" Fuentes v. Shevin, 407 U.S. 67, 80 (1972) (citation omitted). It is undisputed that Plaintiff was given proper notice. The only question remaining, therefore, is whether Plaintiff was given the opportunity for a meaningful hearing. By its plain language, the Act itself provides very little, if any, process to offenders in Plaintiff's situation. No hearing is provided prior to classifying an offender sentenced before November 1, 2007, and there is no specific provision detailing how such an offender may obtain review of his or her classification. The Act does provide that the risk assessment committee, the Department of Corrections, or a court may override a classification if it is determined that it does not accurately predict the risk that the offender poses to the community. 57 Okla. Stat. § 582.5(D)(1). However, according to ODOC's operations memoranda, an offender's classification may only be increased to a higher risk level, not reduced to a lower one. See Oklahoma Department of Corrections Sex and Violent Crime Offender Registration, No. OP-020307, at (I)(B), Nov. 1, 2007. Therefore the Act, standing alone, does not provide sufficient process to meet the standards of the Fourteenth Amendment.

Defendant argues, however, that sex offenders may utilize the ODOC internal grievance process to obtain review of their classifications. This assertion finds support in the operations memoranda concerning sex offenders issued by ODOC. See id. at (IV)(G). This document indicates that "[a]n offender may address issues regarding registration requirements in accordance with OP-090124 entitled 'Inmate Offender Grievance Process.'"

Id.  A review of the attached grievance process indicates that, if a complaint is not resolved through informal means, an offender may submit a grievance form to the reviewing authority. See Oklahoma Department of Corrections Inmate/Offender Grievance, No. OP-090124, at IV-VII, May 3, 2007.  The reviewing authority must respond to the grievance within a specified period of time and, if still unsatisfied, the offender may appeal to the administrative review authority.  Id.  At no point in time is an offender provided with an adjudicative hearing to determine whether he or she in fact poses a risk to the community.

As a general rule, "the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property."  Zinermon v. Burch, 494 U.S. 113, 127 (1990). However, "in situations where a predeprivation hearing is unduly burdensome in proportion to the liberty interest at stake, or where the State is truly unable to anticipate and prevent a random deprivation of a liberty interest, postdeprivation remedies might satisfy due process." Id. at 132 (citation omitted).  In order to determine whether a particular process is constitutionally adequate, courts are instructed to consider the following factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Mathews v. Eldridge, 424 U.S. 319, 335 (1976).

The Court finds that the process provided to Plaintiff by ODOC does not meet the minimum requirements of due process.  Plaintiff's interests here are substantial.  First, he has

an interest in not being publicly classified as someone who "poses a serious danger to the community and [who] will continue to engage in criminal sexual conduct." This is a serious interest, and one that cannot be fully remedied through the use of a post-deprivation process. Additionally, Plaintiff has an interest in registering for a substantially shorter period of time and verifying his address with the authorities much less frequently. The risk of an erroneous deprivation of Plaintiff's interests is high when his only procedural safeguard is a post-deprivation grievance process through ODOC, particularly when ODOC appears to treat his grievance as falling within the Governmental Tort Claims Act. (See Pl.'s Reply, Dkt. No. 30, Ex. 7.) While the State has a strong interest in ensuring the prompt and efficient registration of sex offenders, that interest will not be unduly burdened or hindered by requiring a predeprivation hearing to prove an offender's future dangerousness.

Defendant contends that this result is foreclosed by the Supreme Court decision in Conn. Dep't. of Pub. Safety v. Doe, 538 U.S. 1 (2003). There, the Supreme Court considered whether Connecticut's Sex Offender Registration Act requiring public disclosure of the state's offender registry deprived offenders of due process because they were not afforded a predeprivation hearing to determine whether they were likely to be "currently dangerous." The Court found a hearing was unnecessary because "current dangerousness" was not material to the state's statutory scheme. Rather, the state mandated registration based solely upon the offense of conviction and therefore made no determination that an offender included in the register was currently dangerous. Defendant argues that the same result should obtain here because the Sex Offender Screening Tool utilized by ODOC classifies offenders based

24

solely on their conviction, thereby rendering their current or future dangerousness immaterial.  It appears that Defendant is ignoring, or at best misinterpreting, the clear mandate of 57 Okla. Stat. § 582.5 to use the conviction as the starting point to assess future dangerousness, not the sole factor.  In any event, the Oklahoma legislature has made a determination that the different levels of risk indicate whether an offender poses a danger to the community and is likely to continue engaging in criminal sexual conduct.  Because the legislature has determined that current or future dangerousness is material to the statutory scheme, Plaintiff is entitled to a predeprivation hearing to determine whether he poses a current or future danger.

The statute appears to provide some form of predeprivation process to those offenders who are incarcerated or who were sentenced after November 1, 2007, when the amendments to the Act became effective.  Prior to an inmate's release from a correctional facility, ODOC conducts the risk assessment and assigns a risk level to the offender.  As set forth in ODOC's operations memoranda, inmates may utilize the inmate grievance process to contest their registration requirements under the Act.  <u>See</u> Oklahoma Department of Corrections Sex and Violent Crime Offender Registration, No. OP-020307, at (IV)(G), Nov. 1, 2007; Oklahoma Department of Corrections Inmate/Offender Grievance, No. OP-090124, at IV-VII, May 3, 2007.  For those offenders sentenced after the effective date of the current version of the Act, the court is instructed at sentencing to determine the offender's risk level and notify the offender of his or her duty to register pursuant to the Act.  <u>See</u> 57 Okla. Stat. § 582.2(B).  This provides an opportunity for the offender to be heard on the issue of future

25

dangerousness, thereby satisfying procedural due process.  However, those offenders in

Plaintiff's situation, who were already registered as sex offenders prior to the effective date

of the Act's amendments, appear to have received absolutely no predeprivation process,

which the Court holds is a constitutional requirement.  Accordingly, as applied to Plaintiff,

the Act violates the Due Process Clause of the Fourteenth Amendment.  Plaintiff is entitled

to a hearing regarding his current dangerousness before he is classified as a level I, II, or III

offender.

### 2. *Substantive Due Process*

Finally, Plaintiff contends that the classification system by which he was deemed a

level III offender constitutes arbitrary state action, thereby violating his substantive due

process rights.  As discussed above, Plaintiff has a liberty interest in his good name and

reputation that requires due process protection.  This interest does not constitute a

"fundamental right" that is "'deeply rooted in this Nation's history and tradition' and

'implicit in the concept of ordered liberty.'" Seegmiller v. LaVerkin City, 528 F.3d 762, 767

(10th Cir. 2008) (citation omitted).  Therefore, the Court must apply the rational basis test

to determine whether the Act is constitutional.  Murphy v. Matheson, 742 F.2d 564, 575

(10th Cir. 1984) (noting that "[u]nless a state law trammels fundamental personal rights, we

are to presume that state legislatures have acted within their constitutional power and are to

require only that the law 'bears a reasonable relation to the State's legitimate purpose.'")

(citation omitted).

The Oklahoma legislature undoubtedly has a legitimate interest in protecting the public and providing sufficient information to enable citizens to determine whether a particular sex offender poses a continuing danger to the community. The Act's provision that classifies sex offenders based on their offenses of conviction is rationally related to that governmental interest. The legislature has determined that certain sex offenses are worse than others and tend to provide a stronger indication that an offender poses a danger to the community, and the Court finds that such a classification scheme is rationally related to the State's interest. Accordingly, Plaintiff has not demonstrated a violation of substantive due process.

## CONCLUSION

For the reasons set forth more fully herein, Plaintiff's Motion for Summary Judgment (Dkt. No. 26) is GRANTED. The Court finds that application of 57 Okla. Stat. § 581 et seq. to Plaintiff, who was convicted prior to the November 1, 2007, amendments, violates the Due Process Clause of the United States Constitution. Plaintiff is entitled to a predeprivation hearing prior to being classified pursuant to the Act. Additionally, Intervenor's Motion to Dismiss (Dkt. No. 27) is GRANTED.

IT IS SO ORDERED this 20th day of May, 2009.

ROBIN J. CAUTHRON
United States District Judge